LEXSEE 55 FED. APP'X 594

FRANCIS McALEAVEY, Plaintiff-Appellant, -v.- JAMES W. McMAHON, PHILIP D. OALDEN, and LEROY RICKSY, Defendants-Appellees.

02-7361

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

55 Fed. Appx. 594; 2003 U.S. App. LEXIS 2085

February 6, 2003, Decided

**NOTICE:** [**1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of New York (Wexler, J.).

**DISPOSITION:** Affirmed.

**COUNSEL:** APPEARING FOR APPELLANT: FRANCIS J. SCAHILL, Picciano & Scahill, P.C., Garden City, New York (Sean W. Schaefer on the brief).

APPEARING FOR APPELLEE: OREN L. ZEVE, Assistant Solicitor General, New York, New York (Eliot Spitzer, Attorney General of the State of New York, Michael Belohlavek, Deputy Solicitor General, on the brief).

**JUDGES:** PRESENT: HON. DENNIS JACOBS, HON. GUIDO CALABRESI, and HON. SONIA SOTOMAYOR, Circuit Judges.

**OPINION:**

[*594] SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be **AFFIRMED**.

Plaintiff Francis McAleavey appeals from a final judgment of the United States District Court for the Eastern District of New York (Wexler, J.), entered following a jury verdict, dismissing McAleavey's complaint which alleged excessive force by defendants State Trooper Phillip D. Oalden, former State Trooper LeRoy Ricksy, [**2] and Superintendent of New York State Police James W. McMahon, in violation of *42 U.S.C. §§ 1981*, 1983, 1985, 1986, etc. McAleavey challenges trial rulings that (1) allowed the defense to elicit from McAleavey his prior conviction for assault; (2) excluded evidence of a prior excessive force allegation brought against one defendant, and (3) excluded evidence of a defendant's termination from the state police for drug use.

We grant the district court broad discretion in regard to evidentiary rulings, and reverse only for abuse of that discretion. See *Silverstein v. Chase, 260 F.3d 142, 145 (2d Cir. 2001)*.

(1) Under *Fed. R. Evid. 609*, a witness's credibility may be attacked with evidence of a prior conviction punishable by imprisonment of more than one year if the conviction is not more than ten years old. See *Fed. R. Evid. 609(a)* & (b); *United States v. Hourihan, 66 F.3d 458, 464 (2d Cir. 1995)*. McAleavey's argument that his conviction is almost ten years old is frivolous. True, the district court calculated the age of the conviction from the date when McAleavey's parole was completed, rather than the date he was sentenced [**3] (the proper date if the sentence does not include imprisonment). See *Fed. R. Evid. 609(b)*. However, the conviction was less than ten years old under either calculus.

Further, the district court did not abuse its discretion in finding the evidence admissible under Rule 403. Most of the [*595] prejudice cited by McAleavey flows from the actions of his own counsel. Although counsel made a general objection during McAleavey's cross examination to an inquiry into McAleavey's "felony problems," counsel failed to object to a question regarding McAleavey's prior "assault"--and counsel himself elicited the most damaging testimony, regarding the circumstances of the assault, on redirect. Concerning the admission of the existence of a prior felony conviction, McAleavey had the burden of demonstrating that the conviction's proba-

tive value was substantially outweighed by its prejudice. See *Fed. R. Evid. 403*. The relevant circumstances include (1) when McAleavey committed the crime, (2) when he was sentenced, and (3) when he completed his parole, all of which the court knew. While the court overstated the significance of the third and understated the significance of the second for purposes of [**4] Rule 609's bright line rule, the ruling that the conviction was admissible under Rule 403 was easily within the bounds of the court's discretion.

(2) McAleavey argues that the evidence of defendant's past conduct was probative of a motive and intention to act "maliciously and sadistically for the very purpose of causing harm." Br. for Plaintiff at 17. This argument "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits--introducing evidence of bad acts to show the defendant's propensity to commit such acts." See *Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991)*.

(3) The defendant's failure of a random drug test (seventeen months after the alleged use of excessive force) had no appreciable bearing on the issues before the jury. Exclusion of that evidence was well within the court's discretion.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED**.

LEXSEE 1990 U.S. DIST. LEXIS 9371

ALLEN HODGE, Plaintiff, v. POLICE OFFICERS COLON #623 and
RUPERTO #145, Defendants

No. 83 Civ. 2277 (KTD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1990 U.S. Dist. LEXIS 9371

July 26, 1990, Decided
July 27, 1990, Filed

COUNSEL: [*1]

LINCOLN SQUARE LEGAL SERVICES, INC., Attorney for Plaintiff, New York, New York, Of Counsel: Beth G. Schwartz, Esq., Legal Interns: Jeanette M. Samra, Magda S. Vives.

HON. VICTOR A. KOVNER, Corporation Counsel, Attorney for Defendants, New York, New York Of Counsel: Joseph Portela, Esq., John P. Woods, Esq.

JUDGES:

Kevin Thomas Duffy, United States District Judge.

OPINION BY:

DUFFY

OPINION:

MEMORANDUM & ORDER

Plaintiff Allen Hodge, a New York State inmate initially proceeding pro se, brought this action in 1983 pursuant to *42 U.S.C. § 1983*. Hodge claims that his civil rights were violated when two New York City police officers falsely arrested him and used excessive force against him. Hodge's requests for appointed counsel were denied first by the Honorable Henry F. Werker, who was originally assigned the case, and then by the Honorable Mary Johnson Lowe, who was reassigned the matter following Judge Werker's death. n1

> n1 This Memorandum and Order should be read in conjunction with the companion Memorandum and Order issued on this same date, which involves Hodge's collateral attack on one of his numerous state convictions. Somewhat ironically, in view of his demand that counsel be appointed in the instant civil rights action, Hodge seeks habeas corpus primarily on the ground that he was denied the right to represent himself in state court. Hodge is quite familiar with the courts and legal proceedings. Not only has he had numerous contacts with the state court system resulting from his numerous convictions and the appeals therein (many of which he handled pro se or as co-counsel), but Hodge is also well known to this courthouse. He has directly participated in a number of district court cases, including the following: 81 Civ. 5532; 83 Civ. 6371; 85 Civ. 0185; 85 Civ. 1747; 85 Civ. 3225; 85 Civ. 6272; 86 Civ. 3287, and 87 Civ. 3800. It would also appear that Hodge, in addition to being litigious, is intelligent and articulate.

[*2]

Following a bury trial before Judge Lowe in October 1984, which resulted in a verdict for the defendants, Hodge appealed from the judgment of the district court. The Court of Appeals held that the district court had not applied the appropriate criteria in exercising its discretion pursuant to *28 U.S.C. § 1915*(d) in declining to appoint counsel. n2 *Hodge v. Police Officers, 802 F.2d 58* (2d Cir. 196). The Second Circuit remanded, directing the district court to apply the standard for appointment of counsel set forth in Hodge. *Id. at 62*. The Court further directed that:

> if the trial court finds that Hodge's claim did appear likely to be of substance and that the other factors weighed in favor of appointment of counsel, counsel should be appointed. The burden would remain on

Case 3:02-cv-01736-WWE    Document 42-2    Filed 05/25/2007    Page 4 of 10

Page 2
1990 U.S. Dist. LEXIS 9371, *

Hodge and his newly appointed counsel, however, to present evidence to the district court demonstrating that the earlier failure to appoint counsel was prejudicial.

Id.

If this burden is met, a new trial should be ordered. Id.

n2 Section 1915(d) provides:

The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

[*3]

On remand, this matter was assigned to me. Hodge's appellate counsel, Prisoners' Legal Services, abandoned him on remand, necessitating a lengthy and difficult search for new counsel willing to take the case. Finally, Lincoln Square Legal Services, Inc., affiliated with Fordham University School of Law, agreed to undertake representation of Hodge, and they were appointed by my order, dated October 4, 1989.

FACTS

I Pre-trial Proceedings

In February 1983, Hodge was arrested by New York City Police Officers Colon and Ruperto as a suspect in two armed robberies. In December 1983, Hodge was convicted in Bronx County of robbery, assault, and criminal possession of a weapon and sentenced to twenty years to life. In April 1984, he was convicted in New York County of robbery in the first degree and sentenced to fifteen years to life. Both convictions were affirmed on appeal. The sentences reflect that Hodge had been found to be a persistent violent felony offender, pursuant to *N.Y. Penal Law § 70.10*, based on a 1963 conviction for attempted assault and two 1967 convictions for robbery.

The month following his arrest by Colon and Ruperto, Hodge filed a pro se complaint pursuant [*4] to *42 U.S.C. § 1983*, charging the arresting officers with false arrest and beating him without cause both in effecting his arrest and later in the police car. Hodge claimed he sustained broken ribs, damage to his left eye, bleeding in his left ear, severe headaches, lacerations, and bruises over his body, which purportedly left him unable to move normally. Complaint paras. IV, IV-A. He further avers that the officer refused to permit him to return to the hospital for necessary treatment. Complaint para. IV-A.

On July 12, 1983, Hodge first applied for appointment of counsel. By memorandum endorsement filed September 1, 1983, the Honorable Henry F. Werker denied the application for the appointment of counsel on the ground that there appeared to be "no reason at the present time why the application should be granted." A few weeks later, Hodge submitted a second request, filed September 28, 1983, for the appointment of counsel, claiming he could not properly be deposed without an attorney. Judge Werker denied the request and the deposition went forward.

Following the death of Judge Werker, this matter was reassigned to the Honorable Mary Johnson Lowe on or about May 24, 1984. Hodge renewed [*5] his request for appointment of counsel. By an endorsement dated July 31, 1984, Judge Lowe denied Hodge's application for appointment of counsel. n3

n3 Judge Lowe stated:

Unfortunately, the pool of volunteer lawyers from which we may draw is very limited, and appointment of counsel must be reserved for those cases which are sufficiently complex that they cannot be fairly tried without counsel. We believe that the issues at trial of this case will be relatively straightforward and will turn in large part on the trier of fact's estimation of the plaintiff's and the officer's credibility. Accordingly, the case can be fairly tried without having counsel appointed to represent the plaintiff.

II The Trial

Trial of the case was held on October 15-17, 1985. Hodge appeared pro se. At a conference before the jury was impanelled, Judge Lowe informed Hodge that he could not pursue his claim for false arrest since he had been convicted of robbery. Tr. 4-5.

Hodge then stated that he had never received a response from Officer [*6] Ruperto, a named defendant. Tr. 13. Because Hodge was incarcerated and proceeding pro se, he provided copies of the summons and complaint to the United States Marshall's Service for service upon each defendant. The Marshals, unable to personally serve Ruperto, left the summons and complaint with a captain at Ruperto's precinct. Judge Lowe held that if Ruperto had been sufficiently identified in the papers, the commanding officer had an obligation to locate Ruperto. Tr. 13-15. However, Ruperto's name had been misspelled as "Reperto" on the summons. Tr. 82, 83. The captain at her precinct returned the summons with an indication that the pension section should be contacted for service. There was also a question as to whether Ruperto's shield

number appeared correctly on the summons. Judge Lowe dismissed the complaint against Ruperto for failure to make proper service and trial commenced with Colon as the sole defendant.

In his opening statement to the jury, Hodge asked the jury to excuse his appearance, stating he had been in the same clothes for ten days. Judge Lowe instructed the jury that Hodge's appearance was irrelevant and directed that it should decide the case on its merits. [*7] Tr. 18-19. The defense then opened. Counsel stated that, on the night of February 11, 1983, Colon and Ruperto received a radio call to assist following a shooting. They received a description of a dark-colored checker cab and a black male, six feet tall, wearing a striped shirt. After searching the area, they found Hodge trying to move a cab; both Hodge and the cab answered the radio descriptions. Counsel argued that Hodge then resisted arrest and force was necessary to apprehend him.

A. Hodge's testimony

Hodge then took the stand. He testified that at around 10 or 10:30 on February 11, 1983, during a blizzard, he and six others, including the driver, were pushing a cab stuck in snow when Colon and Ruperto approached him. By the time he noticed Colon, the others had fled the scene. Hodge further testified that Colon told him to get against the cab, and that he complied. Colon asked Hodge what he was doing there and who had "shot her." Hodge replied that the cab did not belong to him, gesturing that the people Colon wanted were "over there." Colon handcuffed Hodge, threw him to the ground, and hit him. Colon then took Hodge to the patrol car and "rammed" Hodge's head against the top [*8] of the doorway. Colon and his partner sat in the front seat of the police car and turned around and beat Hodge on the head and side. Tr. 25, 46. Hodge testified that he was further beaten at the precinct house. Tr. 26, 52.

He was then taken to Lincoln Hospital, where he was identified by the victim of the robbery and assault that had been the subject of the radio call to the officers. When a doctor examined Hodge at the hospital, Colon initially refused to remove the handcuffs to allow x-rays of Hodge's wrist to be taken. The doctor told Hodge that his ribs were fractured and gave Colon an appointment slip to return for treatment. Hodge introduced into evidence the central booking pictures. Tr. 22-35.

On cross-examination, Hodge's medical records at Lincoln Hospital were admitted and the Hodge was confronted with them. Tr. 56-58. The radiology report stated that there was no evidence of fracture or other abnormality, and no fractures or dislocations in the left wrist or knee. Tr. 58-59. Hodge testified that x-rays were taken in April or May 1983, and that the doctors at the Bronx House of Detention told him he had a "small fracture" of the rib. Tr. 60. However, the x-rays taken on [*9] February 25, 1983, at the Rikers Island Health Center, showed no evidence of a fractured rib. Tr. 61-62.

Hodge was further impeached on cross-examination with his convictions for the crimes for which he was arrested by the officers. He denied riding in the cab earlier in the evening, or perpetrating the reported robbery and assault, but then conceded that he had been convicted of the crimes charged on the night in question, namely, robbery in the first degree and assault in the first degree, and of criminal possession of a weapon in the second degree. Tr. 65-67. He also denied stealing, at gunpoint, the cab on February 10, 1983, the night before he was arrested, but admitted that he had been convicted of robbery in the first degree for that theft of the cab. Tr. 68-70.

After the close of cross-examination, Hodge lodged several objections, including: (1) the introduction of all the defense exhibits; (2) that he had no counsel; and (3) and that he had not been given certain documents he requested. Judge Lowe said he would be given every document to which he was entitled. Tr. 74-75. The jury was then excused.

Judge Lowe stated that she had a document called a writ of declaration filed [*10] by Hodge on August 9, 1984, with an affidavit of service on the Corporation Counsel on August 6, 1984. Defense counsel stated she was not familiar with the document, which apparently was never received by Corporation Counsel. In the document, Hodge stated, inter alia, that he wanted a copy of the police radio run reports. Defense counsel said that she would provide him with a copy. Tr. 76-77. Judge Lowe then stated that she had read the transcript of Colon's testimony in the New York County trial regarding robbery of the cab-driver, which Hodge had requested and not yet received. She told Hodge that, contrary to what Hodge believed, Colon had not testified that Hodge had not resisted arrest at the scene. Judge Lowe gave Hodge a copy of the transcript. Tr. 79. Judge Lowe also told Hodge he would be given a copy of the hospital records and would be able to bring to the jury's attention anything he wished. Tr. 79-80. Judge Lowe again denied Hodge's request for counsel. Judge Lowe further stated that she would deny a defense motion to dismiss at the conclusion of Hodge's case since Hodge had indicated he wanted the testimony of Colon and Ruperto as part of his case. Judge Lowe at [*11] that time spelled out on the record, over Hodge's objection, that Ruperto would not be a defendant since she had not been properly served. Tr. 82-83. Court was then adjourned for the day.

When the trial resumed, Judge Lowe asked Hodge if he had looked at all the documents he had been given; he said that he had but that the purported copy of Colon's trial testimony he had been given was in fact the tran-

Case 3:02-cv-01736-WWE    Document 42-2    Filed 05/25/2007    Page 6 of 10

Page 4
1990 U.S. Dist. LEXIS 9371, *

script for the Wade hearing. Judge Lowe then ordered that Hodge be supplied a copy of Colon's trial testimony. Tr. 86-87. Also, on Hodge's request, Judge Lowe ordered defense counsel to obtain an expert to interpret the medical records. Tr. 88-89.

Back on the stand, Hodge stated that he had said everything he wanted to and rested. Tr. 95-96.

B. The defense case

On the defense case, Colon testified that at around 9:30 or 10:00 p.m. on February 11, 1983, Colon was on regular patrol with his partner, Ruperto, when they received a radio call of a woman shot in the lobby of a building. They proceeded toward the address, about four blocks away. On their arrival at the scene, they were informed by another officer that the perpetrator's vehicle was proceeding along Jackson Avenue and they [*12] were given a description of a black male, approximately six feet tall, wearing a blue-checked shirt, driving a blue gypsy cab with livery plates, and with groceries in the back seat. Tr. 105.

A few minutes later, Colon and Ruperto spotted Hodge in the driver's seat of a cab that met the description, with its door open and the wheels in reverse. Two Hispanic men were in front trying to push the car out of the snow. Hodge, the only black man near the cab, met the description of the assailant. The officers got out of their car, remaining behind the open car doors since the assailant had been described as carrying a gun and had allegedly just shot someone. Colon turned on the overhead lights and the high beams of the police car and called to Hodge to come out and show his hands. Tr. 106-107. Hodge at first refused, then complied. However, when Colon approached, Hodge attempted to re-enter the cab. Colon returned to the police car, and he and Ruperto again got behind the police car doors because they believed Hodge was going for his gun. Other police officers had arrived by then to assist. Hodge was again told to display his hands. Hodge got out of the cab and placed his hands on the cab. [*13] Colon ran up, placed his gun against the back of Hodge's head, and told him to show his hands. Tr. 107.

Hodge turned around and said "What do you want?" Colon then threw Hodge down and put his gun to Hodge's head. Hodge again attempted to get away and to get back into the cab, and a brief fight ensued between them. Tr. 128. Other officers approached and helped Colon handcuff Hodge. Colon testified that he had been scared during the incident because he knew the robbery victim had been shot and he did not know whether Hodge had a gun. Tr. 106-107. Colon looked inside the cab and saw, on the front seat, a loaded automatic pistol and a woman's pocketbook, which on inspection turned out to contain the robbery victim's identification. Hodge was then told he was under arrest. Tr. 108-09.

Colon transported Hodge to the 40th Precinct to process the arrest. When Hodge requested medical attention, Colon took him to Lincoln Hospital. Hodge was x-rayed in Colon's presence and the handcuffs were removed for the x-ray procedure. The doctor gave Colon a slip for a follow-up appointment, but Colon told the doctor he did not think Hodge would be able to keep the appointment. Colon asked Hodge if he [*14] wanted the slip and Hodge said he would not be around to return to the clinic. Hodge was then medically cleared and Colon took him to a holding facility. Tr. 109-15.

On cross-examination by Hodge, Colon admitted that Hodge had complained at Lincoln Hospital of pain in his left rib cage and that at the scene of the arrest, Hodge denied that the gun belonged to him or that he had shot anybody. Colon also acknowledged that, when he approached the cab, there were two Hispanics in front of the car, but that he did not speak to them. Tr. 119-25. Judge Lowe then took over the questioning and elicited further testimony from Colon as to Hodge's resistance at the scene of the arrest. Tr. 128-29. Judge Lowe asked Hodge whether he had any other questions on the issue of the use of excessive force during the arrest. Hodge said, "All I can say is I don't have the expertise to bring out the truth," to which Judge Lowe replied, "That is why I asked the questions." Tr. 132.

The next defense witness was Ruperto. Her testimony as to the circumstances of Hodge's arrest was consistent with Colon's testimony. Tr. 134-138. Ruperto denied that Hodge had been repeatedly struck while being transported to the [*15] precinct house and testified that, during the ride, Hodge attempted to get up off the seat and that she pushed him down with her hands. Tr. 139.

On cross-examination by Hodge, Ruperto said there were two other men, Hispanic in appearance, at the scene of the arrest, but that she did not talk to them. She testified she accompanied Colon when he took Hodge to the hospital but that she stayed in the car. Tr. 140-45.

The defense's last witness was Cathy Mercurio, who was accepted by the court as an expert for the purpose of interpreting the medical records, which were introduced into evidence over Hodge's objection. Tr. 148-59. Mercurio testified that the medical report from Lincoln Hospital indicated that Hodge had reported that he had been beaten up, and complained of headaches and pain on the right side of his chest. Tr. 151. An examination of Hodge's head revealed multiple areas of swelling, facial bruises and swelling, and bruising of the external ear. Tr. 151. Moreover, there was blood in the left ear canal, swelling right ear, tenderness of the lower jaw, and a

Case 3:02-cv-01736-WWE    Document 42-2    Filed 05/25/2007    Page 7 of 10

Page 5
1990 U.S. Dist. LEXIS 9371, *

possible ruptured eardrum. Tr. 152. The medical record stated that there was a small area of bruising on the chest and [*16] on the extremities and tenderness of the left knee. Tr. 152. The primary diagnosis was a fracture of the right ninth rib, a ruptured left eardrum, and multiple contusions on the face. However, x-rays taken later showed no evidence of fracture or other significant abnormalities on the ribs. Tr. 150-54. Hodge then cross-examined Mercurio briefly. Tr. 154-56.

The defense rested and then moved for dismissal of Hodge's case on the ground that he had not met his burden of proof. Judge Lowe held that since Hodge relied on the testimony of the police officers as part of the presentation of his case, the defense motion would be treated as one made at the conclusion of Hodge's case.

A number of procedural matters were then raised by Hodge. Hodge several times repeated his complaint that counsel had not been appointed for him and demanded the production of the criminal trial testimony which allegedly contained a statement by Colon that Hodge had not resisted arrest. Hodge also complained that he had to read "a whole bunch of documents" overnight. Tr. 162. Judge Lowe responded that she would not reopen the issue of appointment of counsel and directed her clerk to make additional efforts to obtain [*17] the trial testimony in question, which would be submitted to the jury if relevant. Tr. 163-64.

Hodge also objected to references to his many prior felony convictions, but Judge Lowe ruled that his prior convictions were admissible, particularly those two convictions relating to the crimes underlying Hodge's arrest by the officers in the instant case. Tr. 160-61. Hodge also complained that the medical records were "foreign" to him. Judge Lowe explained that was why she had directed the defendants to produce a witness to interpret the medical records. Tr. 159.

Hodge then claimed there had been witnesses who could have corroborated his claims of excessive force, but that Colon had not gotten their names; the court said this was immaterial to the issue. Tr. 166. Judge Lowe then denied the defense's motion to dismiss. Tr. 168.

The parties then presented their summations. In essence, the defense emphasized Hodge's lack of credibility, noting his prior convictions, the numerous inconsistencies in his testimony, as well as the absence of injuries consistent with his claim that he had been beaten on the head with hard instruments. Tr. 169-79.

Hodge then summed up. He first denied resisting [*18] arrest, and then questioned why no outside witness had been presented to corroborate the defense version of the events. Hodge challenged the officers' ability to determine that the other two men with him were Hispanic simply by casual observation. He said that, contrary to the contention in the defense summation, Tr. 172, he had not testified that he had pointed out witnesses after having been rear-cuffed. He also asked the jury not to base its decision on the fact that he had pled guilty in another incident some time ago. Tr. 180-84. Judge Lowe then charged the jury. Tr. 186-206.

After the jury retired, James Batti, the court reporter for Hodge's New York County criminal trial, presented a portion of Colon's testimony from that trial on the issue of whether Hodge had resisted arrest. Tr. 210. The testimony, elicited on cross-examination by Hodge's criminal trial counsel, was that Hodge had not run from the scene, but had attempted to get back into the cab. Tr. 209-13.

The jury returned a verdict for the defendant. Tr. 213-18. Judge Lowe then stated that, although she had earlier held that Ruperto had not been properly served, the verdict would nonetheless apply to her based on the [*19] charge, which had described the activities of both Colon and Ruperto. Tr. 220.

DISCUSSION

I. Appointment of Counsel

In Hodge v. Police Officers, the Second Circuit, noting that "the rules for appointing counsel in the context of § 1915(d) have not been squarely settled in this circuit," 802 F.2d at 60, set forth several factors to be considered by district courts in determining whether to appoint counsel to represent an indigent civil litigant. The Court found that § 1915 must be understood to guarantee indigents "meaningful access" to the courts, relying on Bounds v. Smith, 430 U.S. 817, 823 (1977). Id. Initially, the district court should determine whether the indigent's position seems "likely to be of substance." Id. at 61. Once this threshold requirement is met, the court should consider the indigent's ability to investigate crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason in that case why appointment of counsel would be more likely to lead to a just determination. [*20] n4 Id, at 61-62.

n4 More than one district court has noted the "schizophrenic quality" to the discussion in Hodge and observed that the Hodge factors "could be construed to direct that an attorney be appointed in virtually every case." Stewart v. McMickens, 677 F. Supp. 226, 227 (S.D.N.Y. 1988) (emphasis in original). In the wake of Hodge, the Second Circuit has noted that Hodge "has been widely misinterpreted in the district

courts" and that the "volunteer lawyer panels of the district courts are drowning in requests." *Cooper v. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)*. The Second Circuit in Cooper stated:

Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention. Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent.

*Id at 174*.

[*21]

The Second Circuit directed that, on remand, the first issue to be determined is whether, based on the record at the time of Hodge's pre-trial requests for counsel, Hodge's claims were "likely to be of substance." *802 F.2d at 62*. The Court further directed that "the district court should also examine the records of Hodge's criminal trials to see if the issues litigated or evidence produced in those proceedings affect the substantiality of Hodge's civil rights claim." Id. Because such an examination is an unnecessarily burdensome task at this late stage in this case's tortured history, it promotes judicial economy to advance directly to the prejudice issue, which appears to me clearly dispositive. Moreover, the detailed consideration of the merits which is apparently required by the Hodge decision as a threshold matter, is subsumed within the prejudice determination. Furthermore, counsel has already been appointed to assist Hodge in moving for a new trial.

II. Prejudice

Hodge describes at length the various ways in which representation by counsel would have safeguarded the "meaningful access" to the courts to which he was entitled. For example, he contends that a reasonably [*22] competent counsel would have ensured that the complaint was properly served on both defendants, made an effective closing statement, conducted better cross-examinations, and sought pre-trial production of medical and police records. Hodge further alleges that counsel would have timely secured his state trial transcripts and adequately prepared Hodge for his deposition. Moreover, counsel would have purportedly conducted an investigation, and then attempted to interview witnesses who were on the scene and subpoena them to testify on Hodge's behalf.

On remand, the Second Circuit specifically directed that a harmless error analysis is appropriate to the determination of whether Hodge has demonstrated that earlier failure to appoint counsel was prejudicial. *802 F.2d at 62*. If Hodge fails to show prejudice, he is not entitled to a new trial. Id.

*Rule 61 of the Federal Rules of Civil Procedure* embodies the "harmless error" doctrine and is instructive to the discussion here. It provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting [*23] a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Thus, courts must disregard any error or defect in the proceeding which does not affect the "substantial rights" of the parties. A new trial is to be granted when, and only when, it is clear that refusal to do so is inconsistent with "substantial justice."

The crucial issues at trial were whether excessive force was used by the defendants and whether Hodge suffered any injury that rises to a constitutional violation. On an examination of the facts, Hodge was not prejudiced in a manner sufficient to be construed as denying him access to the courts or affecting his substantial rights.

Hodge claims he was prejudiced at trial because he did not receive his medical records before trial. He argues that counsel would have timely obtained them and would have subpoenaed the officers' personnel and the Civilian Complaint Review [*24] Board ("CCRB") records to ascertain whether any incidents of excessive force were ever filed against them. As to the medical records, it is unclear whether Hodge ever requested them from Lincoln Hospital or that he ever served the defendants with such a discovery request before trial. However, the fact that Hodge did not have discovery of the medical records does not demonstrate a significant infirmity in the proceedings. Judge Lowe directed that Hodge be given a copy of the hospital records at trial and instructed him that he would be able to bring to the jury's attention anything he wished. Moreover, Mercurio testified, at the direction of the court, to assist Hodge in explication of the records. In any event, the medical records run contrary to many of Hodge's contentions at trial. As such, I do not find that Hodge was prejudiced by failure to see the medical records prior to trial. As to the personnel and C.C.R.B. records, Hodge presumes they were

Case 3:02-cv-01736-WWE    Document 42-2    Filed 05/25/2007    Page 9 of 10

Page 7
1990 U.S. Dist. LEXIS 9371, *

subject to disclosure and contained information to which he was entitled. Mere speculation about their contents, however, does not constitute an affirmative showing of prejudice.

Hodge further contends that he was prejudiced at trial [*25] because he was impeached with his prior convictions and "no analysis was conducted by the trial court as to whether the probative value of this evidence of his prior convictions outweighed the potential for prejudice in his civil rights case." Plaintiff's Memorandum of Law at 19-20. Apparently, Hodge is claiming that counsel would have objected and ensured that such information was not revealed. At trial, however, Hodge did object to the references to his prior convictions, and was overruled. Tr. 160-61. Indeed, Judge Lowe permitted this testimony after analysis and ruling that prior convictions are admissible, especially those resulting from the actions underlying his arrest by Colon. Tr. 161. In addition, *Fed. R. Evid. 609(a)(1)* permits impeachment of a civil witness with evidence of prior felony convictions regardless of attendant unfair prejudice to the witness or the party offering the testimony. A defendant in a civil lawsuit must be permitted to cast doubt on the credibility of the plaintiff by informing the jury that the plaintiff has a criminal record, which overrides a judge's general discretionary authority under *Fed. R. Evid. 403* to balance probative value against prejudice. [*26] *Green v. Bock Laundry Machine Co., 109 S.Ct. 1981 (1989).* See also *Czajka v. Hickman, 703 F.2d 317 (8th Cir. 1983)* (in an inmate civil rights action, district court's error in not balancing the probative value of evidence of inmate's prior conviction against the potential for prejudice was harmless where inmate's credibility was impeached on several other grounds.) Thus, impeachment of Hodge by his prior convictions at trial was proper and could not have been prevented by counsel.

Nor is the fact that Hodge did not depose Colon or Ruperto dispositive, considering that both officers had already given consistent testimony at both the criminal trial and a suppression hearing. Similarly, there is little merit to Hodge's claim that he was prejudiced at his own deposition because he made "statements which were against his interests and later used against him at trial." Plaintiff's Memorandum of Law at 16. Hodge's deposition testimony is clearly admissible as an admission by a party-opponent pursuant to *Fed. R. Evid. 801(d)(2)*. Moreover, under *Fed. R. Civ. P. 32* a deposition may be used at trial against any party. That Hodge revealed too much of the truth at his deposition does not [*27] give rise to an impairment of his "substantial rights" prejudicing his meaningful access to the courts. Competent counsel might have better prepared Hodge for his deposition, but counsel certainly would not have advised Hodge to testify to something less than the truth.

Finally, Hodge claims that he was prejudiced because he referred to himself in his closing argument as a "sinner" who is "repenting" and made detailed references to his prior conviction. Tr. 181, 183-84. mat Hodge did not present a closing argument as cogently or coherently as counsel might have does not give rise to a claim of "prejudice" distinguishable from that which any pro se plaintiff could raise. It clearly does not affect Hodge's "substantial rights" in a manner sufficient to warrant a new trial.

Hodge has failed to carry his burden of demonstrating that the earlier failure to appoint counsel was prejudicial. On the record before me, Hodge was not prejudiced in any of the rights that are essential to the fundamental fairness of a trial. See *Johnstone v. Kelly, 808 F.2d 214, 218 (2d Cir. 1986)* ("Harmless error analysis has not been applied to rights that are essential to the fundamental fairness of [*28] a trial or that promote systematic integrity and individual dignity.") He does not claim that any of his testimony in discovery or at his deposition was coerced, that he was not provided a trial before an impartial jury, that he was prevented from presenting evidence in his favor, that the jury was improperly charged, or that any evidence not before the jury is now available. It may be presumed, although it may not always be the case, that an attorney would conduct litigation better than any pro se plaintiff. Prejudice, however, is not a matter of presumption. That Hodge did not represent himself as well as lawyer may have, and that he lost, are insufficient grounds to warrant a new trial.

On the record before me, it is quite clear that Hodge's credibility would have been inherently weak no matter who was representing him. He was properly impeachable by his criminal record, and was continuing to deny his involvement in the underlying crimes for which he had been convicted. At trial, post-arrest photographs and Hodge's medical records were submitted into evidence and were inconsistent with his claims.

Likewise, Hodge had full opportunity to present his claim to the jury. Hodge, [*29] Colon, and Ruperto all testified. Hodge cross-examined both Colon and Ruperto. Even though there was a question as to whether Ruperto had been served, nonetheless the case was trim as though she were a party. Judge Lowe assisted Hodge in the cross-examination of Colon and obtained records on his behalf. Those records clearly support the officers' position that Hodge had not been beaten in the manner that he claimed. When Hodge claimed Colon impeached himself by contradicting testimony in a previous trial, the court obtained the appropriate transcript, which did not indicate any contradictions. Tr. 210-12. Hodge has never represented that he knew the identities of other eyewitnesses beyond the parties, and none testified at the 3 trials at which Hodge was represented by counsel, when he

had the strongest motive to find those witnesses. In sum, all crucial evidence was before the jury when it made its decision.

Hodges claim of prejudice because he was incarcerated during discovery, made lengthy responses to deposition questions that exceeded the request for information and were against his interest, and could not cross-examine or make a closing statement like a lawyer, could all be legitimately **[*30]** raised by every inmate or indigent plaintiff. No court has yet held "meaningful access" to mean that indigents must always be supplied with counsel in civil as well as criminal cases. *Hodge, 802 F.2d at 60.* Indeed, denial of a request for appointed counsel in a civil action "does not invoke the same level of concern for systematic integrity and individual dignity" as is presented in a criminal action. *Johnstone v. Kelly, 808 F.2d 214, 218, n.3 (2d Cir. 1986).*

To accept Hodge's reasoning implies that a pro se inmate need only allege some claim that goes to issues of credibility, and counsel must then be appointed. However, solicitude for the difficulties that a pro se plaintiff must face, particularly those prosecuting civil rights cases from prison, does not create an absolute right to counsel in all situations where questions of credibility are raised.

In sum, I find that denial of Hodge's request for counsel did not prejudice him or deny him meaningful access to the court. Nor do I find that appointment of counsel would likely have resulted in a different outcome at trial. As such, a new trial is not warranted.

I must take this opportunity to express the appreciation **[*31]** of this court for the work of Lincoln Square Legal Services, Inc., its director and its dedicated staff attorney Beth G. Schwartz who, by their willingness to undertake cases such as this, work for the good of the indigent, their students, the court system, and the cause of justice.

SO ORDERED.